**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| TESS RHODUS, | Case No. 1:19-cv-217 |
| Plaintiff, | McFarland, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Tess Rhodus filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. Proceeding through counsel, Plaintiff presents a single claim of error, which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On October 15, 2015, Plaintiff filed a Title II claim, for a period of disability and disability insurance benefits ("DIB"), alleging a disability onset date of August 19, 2015. (Tr. 14). After Plaintiff's claims were denied, both initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). A hearing was held on February 28, 2018, in front of ALJ Peter Boylan. The ALJ heard testimony from Plaintiff and an impartial vocational expert, Corinna Davies. (Tr. 252-254). On June 13, 2018, the ALJ denied Plaintiff's application in a written decision. (Tr. 14-30). Plaintiff now seeks judicial review of the denial of her application for disability and DIB.

1

At the time of the hearing, Plaintiff was 46 years old with a master's degree in Nursing. (Tr. 185). She has past relevant work as a perinatal nurse, general duty nurse, home health nurse and nurse educator, last working August 19, 2015. Plaintiff filed an application for benefits due to degenerative disc disease, lumbar bulging disc, chronic pain, depression, anxiety, sacroiliitis, carpal tunnel, chronic fatigue and malaise. (Tr. 184). She is fully insured through December 31, 2021.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, multiple arthropathies, myofascial pain, bronchitis, Ehlers-Danlos syndrome, an affective disorder, and an anxiety disorder. (Tr. 16). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff has the residual functional capacity to perform a full range of light work with the following limitations:

> She can climb ramps and stairs frequently, but can never climb ladders, ropes, or scaffolds. She can stoop and crawl occasionally and can kneel and crouch frequently. She must avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation. She should avoid all exposure to workplace hazards, such as dangerous machinery and exposure to unprotected heights. She is limited to simple, routine tasks. She is not able to perform at a production rate pace. She is limited to simple work-related decisions. She is limited to frequent interaction with supervisors and occasional interaction with co-workers but can have no interaction with the public as part of job duties. She is limited to tolerating occasional changes in a routine work setting.

(Tr. 20).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (Tr. 28).

Nonetheless, there are jobs that exist in significant numbers in the national economy that he can perform, including such jobs as weight recorder, marking clerk, and route clerk. (Tr. 29). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB *Id*.

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred in weighing the opinion evidence of record. Upon careful consideration, the undersigned finds that Plaintiff's contention is not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking

4

benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in failing to give controlling weight to the findings of Dr. Hunter and improperly failed to give deference to the functional capacity evaluation performed by physical therapist Jeff Krechting.

1. *Relevant Medical Evidence*

The record indicates that Plaintiff has a long history of back pain. She began treating with pain management specialist, Dr. Mitchell Simons in November 2014. (Tr. 716). At her initial evaluation, Plaintiff exhibited trigger point tenderness in lumbar, pain with flexion/extension, lumbar/facet joint tenderness, positive straight leg raise on the right, diminished EHL on the right and her Achilles tendon reflexes were absent on the right. Id. Dr. Simons' diagnostic impression was lumbar radiculopathy, lumbar spondylosis, sacroiliitis and degenerative joint disease of the hips. (Tr. 717).

An MRI performed in December 2014 revealed at L5-S1 left paracentral shallow disc protrusion posteriorly displacing the descending left S1 nerve root in its lateral recess and abutting the exiting left L5 nerve root in its root foramen, bilevel impingement of the left L5 nerve root; at L4-5 shallow circumferential disc bulge resulting in disc material abutting both descending L5 nerve roots in their lateral recess and at L3-4 shallow posterior disc displacement resulting in disc material abutting the descending left L3 nerve root in its lateral recess. (Tr. 889). However, an April 2015 x-

5

ray revealed no skeletal problems in her back and she was told to undergo physical therapy for her back problems. (Tr. 651).

In September 2015 Plaintiff presented to Dr. Hunter reporting, among other topics, that she wanted to discuss "FMLA paperwork." (Tr. 673). She reported upcoming psychological and PT evaluations, and that she had no strength in her hands. (Tr. 675-77). Dr. Hunter noted her complaints and ordered her to return in four weeks. Between appointments with Dr. Hunter, Plaintiff visited Dr. Simons, re-asserted her typical moderate pain and medication relief statements, as well as her "fair" abilities to walk, work, and complete her ADLS. (Tr. 691). Plaintiff returned to Dr. Hunter towards the beginning of October 2015, and while she walked stiffly and reported her pain was the same, she was smiling and reported feeling better. (Tr. 679- 80). Dr. Hunter ordered Plaintiff to return in three months. (Tr. 685).

The rest of 2015, Plaintiff visited Dr. Simons five more times. (Tr. 848-852), including as part of a limited, successful spinal cord stimulator trial. (Tr. 849). Her reports during the time fell within the same limited range of moderate pain and moderate medication efficacy, except for her first post-spinal cord stimulator report, where she reported she felt so much relief she "went out and did things socially she would not have done" before. (Id.). However, ten days later, she reported her pain levels had significantly spiked and her ability to complete her ADLs had significantly diminished, seemingly without any reason. (Tr. 848). She continued to have myofascial tenderness; pain with flexion/extension and positive straight leg raise on exam. (Tr. 845-848, 999, 1001). Dr. Simons increased her Cymbalta (Tr. 848) and added Lyrica. (Tr. 846).

6

At the end of 2015, Plaintiff underwent a psychological consultative examination with Dr. George Lester (Tr. 818-23), and reported she quit her job in September 2015 because she struggled to sit and "mentally crashed." (Tr. 818). Dr. Lester noted Plaintiff walked with a slowed gait and hugged the walls during the examination. (Tr. 819).

In early 2016, Plaintiff reported to Dr. Hunter that her back pain was worse and she stayed in bed all day and was very inactive. (Tr. 916, 921). Dr. Hunter noted that she shifted frequently when sitting. Id. In May 2016, Plaintiff's insurance approved the SCS implant (Tr. 999), which was performed on June 13, 2016 by Dr. Simons. (Tr. 934-936).

By January 2017, Plaintiff's pain increased to a 7 out of 10. (Tr. 1073). Dr. Simons stopped the oxycodone and prescribed morphine sulfate 15mg three times a day. Id. Due to radiculopathy Plaintiff was experiencing, Dr. Simons performed a lumbar epidural steroid injection in February 2017. (Tr. 1071, 1077). Plaintiff reported only a few days of relief with the injection. (Tr. 1023). She had difficulty staying active for more than 15-20 minutes and was not sleeping well. Id. In March 2017, Plaintiff complained about the side effects of the morphine.  In response, Dr. Simons discontinued the morphine and placed her back on oxycodone. (Tr. 1069).  She was instructed to continue fentanyl, Cymbalta and Lyrica. Id.

In July 2017, Plaintiff reported that the SCS did not help with her back. (Tr. 1061). Dr. Simons noted this may be due to facet arthropathy and/or disc pathology at L5-S1 as documented on the lumbar CT. Id

7

### 2. *Opinion Evidence.*

In January 2016, Plaintiff presented to Jennifer Bailey, MD for a physical consultative evaluation. She reported back pain with radiation of pain down both legs and exacerbated pain with prolonged ambulation, standing or heavy lifting. (Tr. 840). Plaintiff ambulated with a limp and all deep tendon reflexes were brisk on exam. (Tr. 841). Dr. Bailey opined that Plaintiff appeared capable of performing at least a moderate amount of work-related activities. (Tr. 842).

In January 2016, Plaintiff's primary care physician, Dr. Hunter completed a functional capacity questionnaire. He noted her diagnosis as degenerative spine disease and depression/anxiety. (Tr. 826). Clinical findings included limping gait, positive SI joint pain with trunk rotation, and shifting while seated. Id. Dr. Hunter limited Plaintiff to sitting 15 minutes at one time and less than 2 hours in an 8-hour day; standing 15 minutes at one time and less than 2 hours in an 8-hour day with periods of walking every 15 minutes. (Tr. 828). He further indicated that Plaintiff would need to take a 2-hour, unscheduled break during an 8-hour workday. (Tr. 828- 829). Dr. Hunter opined that Plaintiff would require a cane with standing/walking and she should rarely lift less than 10 pounds. (Tr. 829). He estimated she would be absent from work more than four days per month. (Tr. 830).

In November 2016, Plaintiff participated in a functional capacity evaluation ("FCE"). Her patterns of movement and physiological responses were consistent with maximal effort. (Tr. 1103). Plaintiff displayed slow, guarded transitional movement patterns and limited sitting, stand and walking tolerance. Id. Based on testing, it was determined that Plaintiff could rarely lift 15 pounds and occasionally lift 5 pounds (Tr.

1105); rarely forward bend, crouch, climb stairs or walk; and occasionally stand, kneel, and sit. (Tr. 1106). On examination, she ambulated with a cane in her right arm, but did not always use the cane during testing. (Tr. 1108). She occasionally dragged her feet on the floor and as testing progressed her gait become more antalgic. Id. Plaintiff was continuously shifting her weight while sitting and standing. (Tr. 1108) She demonstrated hypermobility with cervical range of motion and in the upper extremities. (Tr. 1108-1109). Plaintiff had decreased grip strength. (Tr. 1109). Based on the findings of the functional capacity evaluation, Plaintiff was deemed "below sedentary" per the US Department of Labor Physical Demand Level. (Tr. 1103).

### 3. Dr. Hunter

In formulating Plaintiff's RFC, the ALJ gave "some consideration" to the assessments of the state agency physical and mental reviewers, who limited Plaintiff to light extertional level with some mental limitations. (Tr. 24). The ALJ noted that many of the medical records were submitted after their assessments were given, but primarily show a continuation of the same treatment. (Tr. 25). The ALJ gave little consideration to the assessment of Dr. Hunter, Plaintiff's treating physician. The ALJ determined that Dr. Hunter's assessment is not supported by the medical evidence, including his own examination findings. (Tr. 26-27). Plaintiff contends that the ALJ's decision is not substantially supported in this regard.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social*

9

*Sec.*, 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; see also 20 C.F.R. § 404.1527(d)(2).

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3).

Here, as noted by the Commissioner, the ALJ provided extensive rationale relating to Dr. Hunter's opinion. (Tr. 18-22-27). The ALJ identified that Dr. Hunter's

10

opinion reflected in the "Physical Residual Functional Capacity" actually conflicted with the records of other medical professionals as well as Dr. Hunter's own pre- and post-opinion treatment records. 20 C.F.R. §404.1527. The ALJ noted that the extreme limitations outlined in Dr. Hunter's assessment were inconsistent with Plaintiff's level of treatment.

In this regard, the ALJ noted that through 2017, Dr. Hunter reported several normal exam findings. (Tr. 27). The ALJ also further outlined that Plaintiff did not have musculoskeletal surgery except the implantation of a spinal cord stimulator. (Tr. 26). More specifically, a year after opining Plaintiff had severe inabilities to stand and walk without a cane, as well as being largely unable to twist, stoop, bend, or squat (Tr. 829-30), Dr. Hunter observed in February 2017 that Plaintiff had no gait problems nor had any difficulties with getting on to or off of the exam table. (Tr. 27, citing Tr. 1026). The ALJ further noted that subsequent treatment records from Dr. Hunter in June 2017 further indicated Plaintiff's gait, strength, and other limitations had resolved. (Tr. 1017-21). The ALJ correctly explained that these same observations of diminished impairments were confirmed by rheumatologist Dr. Mikulik in September 2017. (Tr. 27, citing Tr. 1046-48). Such findings comport with Agency regulations and controlling law. *See Knox v. Colvin*, Civ. No. 5:15-CV-00039-GFVT, 2016 WL 4430932, at *6-9 (E.D. Ky. Aug. 17, 2016) (ALJ's explanation that he gave "little weight" to treating physician's opinion because it was "inconsistent with the objective medical evidence which reveals generally mild findings or imaging of [claimant's] spine, no need for surgical intervention since 2002, no significant treatment for chronic obstructive pulmonary disease or her cardiac condition since the previous decision, and that the

11

claimant's mental health condition has improved with proper medication," sufficiently addressed factors to be considered in giving good reasons for discounting the opinion of a treating source). See also Howell, 2018 WL 1224513, at *7 (holding that an ALJ did not err in formulating RFC when he considered "Plaintiff's relatively conservative treatment – namely that he did not require surgical intervention. . . ").

The ALJ further noted that Dr. Bailey's consultative examination, performed the same month as Dr. Hunter's assessment, found that Plaintiff ambulated with a mild limp, but could forward bend without difficulty and range of motion of all extremities was completely normal. (Tr. 27). Dr. Bailey further found no evidence of radiculopathy and that her grasp strength and manipulative ability were well preserved bilaterally, which is inconsistent with Dr. Hunter's opinion that typing could not be sustained. See Anderson v. Comm'r Soc. Sec., 195 Fed. Appx. 366, 370 (6th Cir.2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); see also Kidd v. Comm'r of Soc. Sec., 283 Fed. Appx. 336, 340 (6th Cir.2008) (citing Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 287 (6th Cir.1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

The ALJ further found that Dr. Hunter completed the form in the presence (and with the assistance) of the Plaintiff and therefore "begs the question whether this assessment" reflected Dr. Hunter's opinion or was purely just "repeating what [Plaintiff] said." (Tr. 26). ALJs are permitted to consider the facts, circumstances, and potential biases of treating physicians when weighing treating physician opinions. Keating v.

12

*Comm'r of Soc. Sec. Admin.*, Case No. 3:13-CV-487, 2014 WL 1238611, at *9 (N.D. Ohio Mar 25, 2014) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)(ALJs permitted to consider that treating physicians "may want to do a favor for a friend and client" when they render extreme limitations in support of disability benefits claim)).

In light of the foregoing, the undersigned finds that the ALJ properly weighed the findings of Dr. Hunter.

### 4. FCE

Plaintiff further asserts that the ALJ failed to give controlling weight to the FCE. The FCE was completed by her physical therapist (PT). Plaintiff's contention lacks merit.

As noted by the Commissioner, the ALJ correctly found that the November 2016 FCE was "inconsistent with other medical evidence from around the time it was given and afterwards," including with Dr. Simon's treatment notes from just nine days later. (Tr. 25, citing Tr. 981). The ALJ also noted that the FCE's findings conflicted with Dr. Hunter's records from his first post-FCE appointment in February 2017, where Plaintiff was observed walking normally and getting on to and off the exam table with no problems. (Tr. 25, citing Tr. 1023-26). The ALJ also noted that treatment notes reflecting Plaintiff's subsequent appointments with Dr. Hunter in June 2017 and Dr. Mikulik in September 2017, respectively, also conflicted with the FCE. (Tr. 25, citing Tr. 1017-21 (June 2017), and Tr. 1046-48 (September 2017)). Finally, the ALJ considered NP Atchley's findings from July 2015, which largely conflicted with the FCE. (Tr. 21, citing Exhibit 7 (see Tr. 637-43).

Additionally, the ALJ correctly identified that PT Krechting could not qualify as an "acceptable medical source" under the regulations. 20 C.F.R. §404.1513. Because PT Krechting could not qualify as an "acceptable medical source," (a concession Plaintiff explicitly makes in her brief (Doc. 9 at 17)), the ALJ had wide berth in weighing PT Krechting's opinion, appropriately rejected it, and properly explained his reasoning. SSR 06-03p; see also, *Noto v. Comm'r of Soc. Sec.,* 632 F.App'x. 243, 248-49 (6th Cir. 2015) (physical therapists are a "non-acceptable medical source" requiring only minimal articulation by the ALJ).

Notably, while Plaintiff alleged poor walking ability and poor ADLs in some of the appointments with Dr. Simons following the FCE, Plaintiff later said she had returned to having "fair" walking abilities in October 2017 (Tr. 1055) and as recently as January 2018 (Tr. 1136), just a month before the hearing.

An ALJ is required to do precisely as the ALJ did here—to determine an RFC based upon the medical evidence as a whole. In fact, the ALJ alone is responsible for determining a Plaintiff's RFC. *See* 20 C.F.R. § 404.1546(d). There is no regulatory requirement that an ALJ adopt every facet of a particular opinion in formulating an RFC, so long as the record supports the RFC actually determined by the ALJ, and he adequately explains his analysis in a manner sufficient to allow review. As such, an ALJ is "not required to recite the medical opinion of a physician verbatim in his RFC. *See Poe v. Com'r of Soc. Sec.*, 342 Fed.Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009); *see also Smith v. Colvin*, 2013 WL 6504681, at *11 (N.D. Ohio, Dec. 11, 2013) ("[T]here is no requirement that an ALJ accept every facet of an opinion to which

14

he assigns significant or substantial weight."); *Smith v. Com'r of Soc. Sec.*, 2013 WL 1150133 at *11 (N.D. Ohio, Mar. 19, 2013) (same).

Although Plaintiff may disagree with the ALJ's decision, she has not shown that it was outside the ALJ's permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *Blakley*, 581 F.3d at 406. Even if a reviewing court would resolve the factual issues differently, when supported by substantial evidence, the Commissioner's decision must stand. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Indeed, the Sixth Circuit upholds an ALJ's decision even where substantial evidence both contradicts and supports the decision. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). For these reasons, the ALJ's decision is substantially supported in this regard and should not be disturbed.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                                          *s/Stephanie K. Bowman*
                                                         Stephanie K. Bowman
                                                         United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TESS RHODUS, | Case No. 1:19-cv-217 |
| Plaintiff, | McFarland, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16